## STEEL v. BLANCHETTE.

1. HOMESTEAD—EXEMPTION—ABANDONMENT—EVIDENCE.

As mere absence from her homestead for four or five years would not conclusively establish abandonment of the homestead rights of an old lady of seventy-five years of age, the enforced absence of such owner because of feeble health or the necessity of going out to earn a living, by work as a nurse, did not authorize a creditor to levy on the property, though she also, about the same time, sold her furniture and rented the land and residence, and had

offered to sell the place in a deal for certain village property which she could have occupied in the same manner. The question of abandonment of a homestead is principally a question of intention.

2. Same—Intent—Sale—Proceeds.

Upon selling the homestead with the purpose of investing the proceeds in another home, the proceeds also become exempt during the transition up to the statutory limit of fifteen hundred dollars.

Appeal from Oceana; Sullivan, J. Submitted June 6, 1916. (Docket No. 2.) Decided September 26, 1916.

Bill by Elizabeth Steel against Victor J. Blanchette for a decree setting aside an execution levy on complainant's homestead. From a decree for complainant, defendant appeals. Affirmed.

*F. E. Wetmore,* for complainant.

*Hall & Greene,* for defendant.

Bird, J. Complainant asked for and obtained a decree in the trial court setting aside an execution levy on her premises in Oceana county, claiming that they constituted her homestead. The defendant resisted the proceeding upon the ground that prior to the levy of the execution in December, 1914, complainant had abandoned her homestead. The same contention is made in this court.

Defendant contends that in leaving the premises soon after the death of her husband in 1909, and living elsewhere, and offering the premises for sale, she has abandoned her homestead right therein. The premises, consisting of 40 acres, were purchased by complainant in 1907, and she and her husband resided thereon until his death in 1909. Soon after she sold the furniture, except her bedding, and lived around among her relatives, and at times acted in the capacity of nurse. She

had several Michigan relatives, and a son and daughter who resided in Northern Indiana. She testified that she was induced to take this action because of the advice of her sister that it was unwise for a woman of her age to remain in the farmhouse alone. She was at that time 74 years of age. She rented the place from year to year to a tenant, and on the income derived therefrom, and the income from her work as a nurse, she has paid her living expenses and her taxes. She has no other property, either personal or real. She insists that she never abandoned the premises as her home, and that when she rented it and went away she did it with the intention of returning, and it was shown by complainant's relatives that she frequently stated that she was going to return to her home.

1. The sole question is one of abandonment. The mere absence from the premises 4 or 5 years would not be conclusive that she had abandoned it as a homestead if she had, during all that time, intended to return. *Kaeding* v. *Joachimsthal,* 98 Mich. 78 (56 N. W. 1101). In a way her absence from her homestead appears to have been enforced. It is evident that a woman of her age could not work the premises. The income from the farm, which was shown for two years to have been $65 a year, would have been insufficient to support her and pay the taxes. The question of abandonment of her homestead is almost entirely a question of intention. 21 Cyc. p. 602; *Bunker* v. *Paquette,* 37 Mich. 79. When she asserts that it was her intention to return to her home, and that it was never her intention to abandon the premises as her homestead, I can find no good reason in the record for disbelieving her, or doubting the sincerity of her claim. Most people, and especially elderly people, have some place they call home, even though they do not occupy it much of the time; and, notwithstanding defendant insists that

she has abandoned this home, the record does not disclose that she has any other home.

But it is argued that her offer to sell it was evidence of abandonment. Complainant explains this by saying that at one time she offered to trade the premises for a home in the village of Walkerville, where she would be near her relatives, or she would sell and purchase a home there. This was a mere unexecuted intention, but had she done so, the house and lot received in exchange, or the proceeds of the sale, would have been exempt during the transition if neither exceeded the statutory limit of $1,500. *Myers* v. *Weaver*, 101 Mich. 477 (59 N. W. 810) ; *Corey* v. *Waldo*, 126 Mich. 706 (86 N. W. 122).

The decree of the trial court is affirmed, with costs to complainant.

STONE, C. J., and KUHN, OSTRANDER, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.